IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALREE B. SWEAT, III,

       Petitioner,

v.

                                          No. 1:16-cv-01263-JCH-KRS

JAMES MULHERON, Warden,

       Respondent.

**PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

      Alree Sweat petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Earlier in this case, Sweat elected to dismiss the claims he had not exhausted in the New Mexico courts. (Doc. 21). Before the Court now are the merits of Sweat's remaining constitutional challenges: (1) whether sufficient evidence supported Sweat's convictions for burglary of a vehicle; and (2) whether trial counsel was ineffective for (a) not investigating and filing a motion to suppress DNA results; (b) failing to raise the trial court's denial of a motion to consolidate in a docketing statement; and (c) waiving Sweat's speedy trial rights. (Doc. 19). Applying the deferential standard in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court concludes that Sweat has not carried his burden to show the state court unreasonably applied federal law or determined the facts. Pursuant to an order of reference from United States District Judge Judith C. Herrera, *see* 28 U.S.C. § 636(b)(1)(B); Doc. 9, the Court recommends that Sweat's petition for a writ of habeas corpus be **DENIED**.

**BACKGROUND**

      In late April 2013, Las Cruces saw a series of car burglaries. (Doc. 25-1, at 52). DNA collected from the scenes implicated Sweat some of the offenses. (*Id.*) As is relevant here, four

of the burglaries occurred at a Motel 6 on April 28, 2013 and three at Buffalo Wild Wings on April 23, 2013. (Doc. 25-1, at 59-60). Of the four vehicles burglarized at the Motel 6, blood was recovered from a laundry basket in one car. (*Id.*). At the restaurant, blood was recovered from inside two vehicles. (Doc. 25-1, at 52). There were no eyewitnesses to the crimes. (*Id.*). On November 14, 2013, a grand jury indicted Sweat in three proceedings, charging separate counts for each vehicle involved. (Doc. 25-1, at 13).

On February 5, 2015, Sweat moved to consolidate the cases. (*Id.*). The trial court consolidated two of the indictments.[1] (Doc. 25-1, at 18-19). A jury trial began on March 25, 2017 on the combined charges. (Doc. 25-1, at 1-5; 23). Over two days, an investigating detective testified as well as two DNA experts, one for the State of New Mexico and one Sweat retained. (Doc. 25-1, at 30- 32). The detective told jurors that blood was found in or on items removed from three of the seven vehicles and a warrant was obtained for Sweat's DNA. (*Id.*). The State's expert testified that the DNA from the vehicles matched Sweat's. (*Id.*). Sweat's expert balked at the number DNA samples collected as well as the chain of custody. (*Id.*) Sweat's expert raised the possibility of contamination resulting from the collection process. (*Id.*).

After the State's presentation, the trial court directed a verdict on Counts 1-3 and 7 of the consolidated indictment. (Doc. 25-1, at 23-24). For those charges, the State did not offer DNA evidence linking Sweat to the subject vehicles. (Doc. 25-1, at 32). As to the remining counts, the jury returned a guilty verdict at the end of trial. (Doc. 25-1, at 2). Sweat was subsequently sentenced to a total of eleven years in prison and a year of parole.[2] (Doc. 25-1, at 1-5). As for

---

[1] As part of the consolidation, the trial court renumbered the counts in the second indictment: Count 1 became Count 5; Count 2 became Count 6, and Count 3 became Count 7.
[2] Specifically, the trial court sentenced Sweat to eighteen months incarceration with a habitual enhancement of four years on Count 4; eighteen months with a habitual offender enhancement of four years on Count 5; and eighteen months with a habitual offender enhancement of four years on Count 6. The court ordered Counts 4 and 5 to run consecutively. Count 6 would be served concurrently with Count 5, and Sweat was ordered to complete one year on parole.

Sweat's third case, which was not consolidated, the jury hung on the single count that survived a directed verdict. (Doc. 25-2, at 140-43). The State decided not to retry Sweat on that charge (Doc. 25-2, at 144).

Sweat unsuccessfully appealed his convictions and applied for postconviction relief in the state courts. (Doc. 25-1, at 25-67). On November 17, 2016, Sweat filed the instant petition under 28 U.S.C. § 2254 for a writ of habeas corpus. (Doc. 1). Thereafter, this Court determined that Sweat did not exhaust his state court remedies for some of his constitutional challenges as 28 U.S.C. § 2254 requires before a petitioner may seek federal habeas relief. (Doc. 19) Sweat ultimately elected to dismiss those claims. (Doc. 23).

## STANDARD OF REVIEW

The AEDPA limits the Court's review of habeas-corpus petitions brought under 28 U.S.C. § 2254. As a matter of comity and to safeguard against only "extreme malfunctions in the state criminal justice systems," the Court may grant relief only "if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented." *Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018) (citations omitted). This hurdle is necessarily "dauting" in deference to the state courts. *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011). As to the first prong, the petitioner must show that the state court's decision applied "a rule that contradicts the governing law set forth in [Supreme Court] cases [or] if the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

The state court need not cite or even demonstrate awareness of Supreme Court precedent if the state court's reasoning and result do not contradict controlling decisions. *See Early v. Packer*, 537 U.S. 3, 8 (2002). To reach the level of an "unreasonable application," the petitioner must show more than an incorrect conclusion—the state court must have been objectively unreasonable in its decision, not a "subjective assessment" of the "views of the judges on the relevant state court (or, for that matter, the views of individual federal judges)." *Hooks v. Workman*, 606 F.3d 715, 751 (10th Cir. 2010). Under the second prong, the petitioner must show that "all reasonable minds reviewing the record would have to agree that the state court's determination of facts was incorrect." *Smith*, 904 F.3d at 880. And the adverse decision must be based on that unreasonable determination of the facts. *See id.*

## DISCUSSION

Sweat asserts he was convicted in violation of his due-process rights and contrary to the Constitution's guarantee of effective assistance of counsel. The Court disagrees with both of Sweat's assertions.

### Sufficiency of the Evidence

Due process requires a conviction be based "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the petitioner] is charged." *Parker v. Scott*, 394 F.3d 1302, 1314 (10th Cir. 2005) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). In assessing a conviction's sufficiency, the Court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under the AEDPA, sufficiency challenges benefit from a "twice-deferential standard" of review: (1) "[a] reviewing court may set aside the jury's verdict on the ground of

insufficient evidence only if no rational trier of fact could have agreed with the jury"; and (2) "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge . . . [unless] the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

The New Mexico Court of Appeals rejected Sweat's due process challenge in two filings. (Doc. 12-1, at 29-31; 39-42). In a proposed notice of summary affirmance, which was later incorporated into an unpublished memorandum opinion, the NMCA reasoned:

> Our review of the denial of directed verdict motion asks whether evidence was adduced to support the underlying charge. The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. In order to establish automobile burglary, the State was required to prove that Defendant entered the vehicle, without authorization, with intent to commit any felony or theft therein. Defendant was convicted on three counts . . . [I]t appears that the testimony presented at trial established that the first of the three burglaries was of a 2010 Honda Accord at a Motel 6 on April 23, 2013. The two other automobile burglaries involved at 2000 White Honda and a 2005 Black Chrysler at a Buffalo Wild Wings on April 26, 2013. Blood stains or spots were left at each of the automobile burglary sites. It appears testimony was presented that the Motel 6 blood was found on a laundry basked that had been removed from the 2010 Honda Accord. It also appears that testimony was presented that blood was found on the inside of the driver's door on the inside of the 2000 White Honda and was found on various items of the 2005 Black Chrysler. Although there was no eyewitness testimony presented, the State produced a DNA expert, who testified that the DNA left . . . belonged to Defendant. Based on these facts, we suggest there was sufficient evidence to support each of the three automobile burglary convictions. . . . To the extend . . . [Defendant] put on evidence attempting to discredit the State's DNA expert testimony, we point out that this Court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. Thus, to the extent Defendant directs this court to contrary evidence, we note that such evidence does not provide a basis for reversal.

(Doc. 12-1, at 29-31) (citations omitted).

In the memorandum opinion, the NMCA reiterated its deferential standard "to determinations of weight and credibility that are made by the fact finder." The NMCA also

rejected any attack on the chain of custody by Sweat as going to "the weight of the evidence," which is the province of the jury to resolve. (Doc. 12 -1, at 39-42).

Here, there is no material distinction between the standard the NMCA used to review sufficiency and that articulated by the Supreme Court.  Nor is there any dispute as to the underlying facts—Sweat put on an expert at trial that challenged the number of DNA samples collected as too many and found fault with the chain of custody, raising contamination concerns.  Similarly, Sweat does not challenge the NMCA's recitation of the elements of burglary of a vehicle.  By process of elimination, Sweat must mean his convictions are unconstitutional because of an unreasonable application of the law to the facts—the possibility the DNA was contaminated meant that the prosecution could not prove beyond a reasonable doubt Sweat was connected to the vehicles in question.

The main problem is Sweat's assumption that the expert's testimony had to be accepted as true.  The jury, however, was free to believe or reject the expert's testimony.  The State put on evidence that Sweat's DNA was a match, and Sweat offered testimony that the DNA may have been contaminated through collection and transmittal.  Supreme Court precedent "unambiguously instructs that a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos*, 565 U.S. at 7.  The NMCA indulged this presumption as it was required to do, and Sweat offers no law or facts that would mandate a different result. The NMCA's decision, therefore, was neither contrary to nor an unreasonable application of Supreme Court precedent; and the state court did not unreasonably determine the facts.

# Ineffective Assistance of Counsel

Sweat lodges three challenges to his trial attorney's performance: alleged (1) deficient pretrial investigation; (2) failure to expand the docketing statement on appeal; and (3) withdrawal of a speedy-trial demand. To prove ineffective assistance of counsel, a habeas petitioner must demonstrate that his attorney's performance was deficient and he suffered prejudice as a result. *See Strickland v. Washington*, 466 U. S. 668, 687 (1984). The state trial court summarily denied Sweat application for post-conviction relief on this ground. Where the state court decides an issue on the merits but does not offer reasons, this Court must still give deference under the AEDPA. The Court may "look through" the unreasoned decision to the last reasoned ruling of the state court that relates to the issue. *Wilson v. Sellers*, __ U.S. __, __,138 S. Ct. 1188, 1192 (2018) (holding that "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning). If no "explained" disposition exists, as here, the Court must determine "what arguments or theories . . . could have supported, the state court's decision[.]" *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Court then asks "whether . . . fairminded jurists could disagree that those arguments or theories are inconsistent with" controlling Supreme Court precedent. *Id.*

## *Pretrial investigation*

Sweat claims his attorney should have filed a motion to suppress DNA results, which Sweat says counsel would have known had he studied the case from the outset and understood Sweat was the victim of a "pretextual arrest." Although the trial court did not specifically address this contention in its summary denial, it purported to rely on and incorporate an

# Ineffective Assistance of Counsel

Sweat lodges three challenges to his trial attorney's performance: alleged (1) deficient pretrial investigation; (2) failure to expand the docketing statement on appeal; and (3) withdrawal of a speedy-trial demand. To prove ineffective assistance of counsel, a habeas petitioner must demonstrate that his attorney's performance was deficient and he suffered prejudice as a result. *See Strickland v. Washington*, 466 U. S. 668, 687 (1984). The state trial court summarily denied Sweat application for post-conviction relief on this ground. Where the state court decides an issue on the merits but does not offer reasons, this Court must still give deference under the AEDPA. The Court may "look through" the unreasoned decision to the last reasoned ruling of the state court that relates to the issue. *Wilson v. Sellers*, __ U.S. __, __,138 S. Ct. 1188, 1192 (2018) (holding that "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning). If no "explained" disposition exists, as here, the Court must determine "what arguments or theories . . . could have supported, the state court's decision[.]" *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Court then asks "whether . . . fairminded jurists could disagree that those arguments or theories are inconsistent with" controlling Supreme Court precedent. *Id.*

## *Pretrial investigation*

Sweat claims his attorney should have filed a motion to suppress DNA results, which Sweat says counsel would have known had he studied the case from the outset and understood Sweat was the victim of a "pretextual arrest." Although the trial court did not specifically address this contention in its summary denial, it purported to rely on and incorporate an

# Ineffective Assistance of Counsel

Sweat lodges three challenges to his trial attorney's performance: alleged (1) deficient pretrial investigation; (2) failure to expand the docketing statement on appeal; and (3) withdrawal of a speedy-trial demand. To prove ineffective assistance of counsel, a habeas petitioner must demonstrate that his attorney's performance was deficient and he suffered prejudice as a result. *See Strickland v. Washington*, 466 U. S. 668, 687 (1984). The state trial court summarily denied Sweat application for post-conviction relief on this ground. Where the state court decides an issue on the merits but does not offer reasons, this Court must still give deference under the AEDPA. The Court may "look through" the unreasoned decision to the last reasoned ruling of the state court that relates to the issue. *Wilson v. Sellers*, __ U.S. __, __,138 S. Ct. 1188, 1192 (2018) (holding that "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning). If no "explained" disposition exists, as here, the Court must determine "what arguments or theories . . . could have supported, the state court's decision[.]" *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Court then asks "whether . . . fairminded jurists could disagree that those arguments or theories are inconsistent with" controlling Supreme Court precedent. *Id.*

## *Pretrial investigation*

Sweat claims his attorney should have filed a motion to suppress DNA results, which Sweat says counsel would have known had he studied the case from the outset and understood Sweat was the victim of a "pretextual arrest." Although the trial court did not specifically address this contention in its summary denial, it purported to rely on and incorporate an

"Amended Notice of Initial Review" completed by New Mexico's Public Defender Department. *See* N.M. Rule Ann. 5-802 (H)(1) (providing the Department authority, among other things, to "indicat[e] whether the petition is a proceeding that a reasonable person of adequate means would be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment"). As is relevant here, the notice explained that Sweat did not support his claim of ineffectiveness with facts and highlighted that Sweat had, in fact, challenged his arrest by way of a *pro se* motion. Sweat's attorney later withdrew that motion with Sweat's consent, which, according to the Department, "indicat[ed] there was no merit" to the claim of ineffective assistance. (Doc. 25-2, at 94).

Sweat has not carried his burden to show the state court unreasonably applied federal law or determined the facts. Beyond the general conclusion that he was the victim of a pretextual arrest, Sweat offers scant details. As was the state court, this Court is left to speculate as what facts and law might support a pretextual arrest theory. The failure to factually support an ineffective assistance of counsel claim is generally fatal. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (ineffective assistance claim fails "where petitioner's allegations are merely conclusory in nature and without supporting factual averments") (citation omitted)). Moreover, Sweat does not appear to deny that he consented to his attorney's withdrawal of the *pro se* motion challenging the arrest. Thus, fair-minded jurists could easily disagree that the state court's summary dismissal of Sweat's application for post-conviction conflicted with *Strickland*'s definition of ineffective assistance of counsel. *See Harrington*, 562 U.S. at 101.

To the extent Sweat's true concern is that his attorney did not move to suppress because the detective that collected Sweat's DNA was not certified, collected DNA for the first time in this case, and did not preserve the chain of custody, Sweat does not demonstrate why these facts

warrant relief.  Sweat does not point to Supreme Court precedent requiring suppression where a law enforcement officer lacks a certificate or even New Mexico law requiring certification.  Lack of experience with handling DNA as well as deficiencies in chain of custody would go to the weight, not the admissibility of the DNA.  Here too, fair-minded jurists would have ample reason to disagree that a constitutional violation occurred.

*Docketing statement*

Sweat argues trial counsel was constitutionally deficient for failing to raise the issue of consolidation on direct appeal.  Although the trial court consolidated two out of three separately filed cases for automobile burglary, the third case proceeded independently.  In that case, the jury hung on one count resulting in a mistrial, and the trial court directed a verdict on the other offense.  The prosecution later decided not to retry Sweat.  Somehow, Sweat takes these facts as evidence that jury found the DNA was insufficient for conviction.  How, exactly, these facts translate into ineffective assistance is unclear.  Even assuming the matters had been consolidated and Sweat had the same jury as he did in the third case, it is rank speculation that the jury would have hung on all the counts and the prosecution would have decided not to retry Sweat.  As above, a fair-minded jurist could disagree that adding the trial court's denial of consolidation to the docketing statement would have changed the result thereby showing prejudice under *Strickland*.

**Withdrawal of speedy trial rights**

Sweat contends his lawyer did not consult with him about, or even recognize, that the statute of limitations had run.  Sweat equates this alleged deficiency to withdrawal of his demand for a speedy trial without consent.  The record reflects that Sweat's attorney either purported to waive speedy-trial rights or acknowledge the potential for delay in a motion for continuance and

a motion to withdraw as counsel. (*See*, *e.g.*, Doc. 25-2 p. 95). As above, Sweat does not provide concrete details as to either prong of the *Strickland* analysis. Sweat more generally (and confusingly) complains that he did not receive a preliminary hearing because the State filed a *nolle prosequi* in the magistrate court and proceeded by criminal information, which extinguished that right. Sweat also reiterates his belief that there was no probable cause to support the charges of burglary. Under the AEDPA's deferential standard of review, Sweat's contentions fail.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI. In assessing claims of unconstitutional delay, the Court balances: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). Sweat does not argue any of these factors, and, as the Public Defender Department observed in its amended notice, there were multiple reasons explaining the one year four-month duration of the case. (Doc. 25-2 p. 95). Sweat himself filed a *pro se* motion, which took time to resolve. A substitution of counsel took place necessitating additional time to allow the new attorney to understand the issues. With Sweat's approval, substituted counsel asked to withdraw citing a breakdown in communication. Finally, Sweat needed time to secure a DNA expert to defend against the prosecution's theory: Sweat burglarized the vehicles because his DNA was found in the vehicles. Thus, even assuming that Sweat did not consent to the various delays in the case and it was deficient performance on his attorney's part to purport otherwise, Sweat does not demonstrate that the state court *unreasonably* applied the *Barker* test.

In terms of the statute of limitations, the Court is puzzled by Sweat's argument. In New Mexico, burglary of a vehicle has a five-year limitations period; the prosecutor must secure an

indictment or file charges "within five years from the time the crime was committed." N.M. Stat. Ann §§ 30-1-8 & 30-16-3(B). Here, Sweat allegedly committed the crimes in April 2013. He was indicted in November 2013. Thus, there was no statute of limitations issue for trial counsel to raise. From what the Court can discern of Sweat's arguments, reasonable jurists could disagree that there was a speedy-trial violation. Habeas corpus relief is, therefore, inappropriate.

## CONCLUSION & RECOMMENDATION

For the reasons stated above, Sweat has failed to demonstrate that the New Mexico courts unreasonably applied federal law or determined the facts in ruling that Sweat's convictions did not violate the Constitution's guarantee of due process and effective assistance of counsel.

**IT IS, THEREFORE, RECOMMENDED** that Sweat's petition under 28 U.S.C. § 2254 for a writ of habeas corpus, as amended, supplemented, and clarified (*see* Docs. 1, 6, 15, 21, & 28) be **DENIED** and this matter be **DISMISSED with prejudice**.

**IT IS FURTHER RECOMMENDED** that Sweat's motion to appoint counsel (Doc. 23) be **DENIED as unnecessary and moot** in light of the Court's recommendation.

**IT IS FURTHER RECOMMENDED** that Sweat's motion for an extension of time (Doc. 29) be **DENIED as moot**.

**IT IS FURTHER RECOMMENDED** that Sweat's motion to introduce documentary evidence (Doc. 32) be **DENIED** because those documents were not before the state courts in this matter. *See Grant v. Royal*, 886 F.3d 874, 889 (10th Cir. 2018) (Review "is limited to the record that was before the state court that adjudicated the claim on the merits.").

*[signature]*
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**